**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| SUBWAY INTERNATIONAL B.V., | : | CIVIL ACTION NO: |
| Plaintiff, | : | 3:10-cv-1714 (JCH) |
| | : | |
| v. | : | |
| | : | |
| PANAYOTA BLETAS and | : | MARCH 13, 2012 |
| JOHN BLETAS, | : | |
| Defendants. | : | |

**RULING RE: APPLICATION TO CONFIRM ARBITRATION AWARD (DOC. NO. 1)**

Subway International B.V. ("SIBV") petitions the court to confirm an arbitration award pursuant to Section 9 of the Federal Arbitration Act ("FAA").  Defendants Panayota and John Bletas oppose SIBV's petition.  For the reasons herein, SIBV's Application to Confirm Arbitration Award (Doc. No. 1) is **granted**.

**I.     BACKGROUND**

Plaintiff Subway International B.V. ("SIBV"), an international franchisor of SUBWAY® sandwich stores, is a Netherlands limited liability corporation with its principal place of business in Amsterdam.  On March 31, 2004, SIBV and the defendants, Panayota and John Bletas, entered into Franchise Agreement No. 33926 ("Franchise Agreement"), permitting the defendants to operate a Subway restaurant in Greece on the condition that the defendants pay SIBV weekly royalty and advertising fees out of their restaurant's gross sales. Pl.'s Appl. to Confirm Arbitr. Award (Doc. No. 1) ¶¶ 5-7.  The Franchise Agreement contained a dispute resolution clause that provides in relevant part: "The parties will arbitrate any Dispute the parties do not settle under the discussion procedures above, and any Dispute which this Agreement provides will be submitted directly to arbitration, except as provided in the Agreement."

Franchise Agr. (Doc. Nos. 1-1 & 1-2) ¶ 10.c.  The parties also stipulated in the

Franchise Agreement that they would arbitrate such disputes in accordance with the

United Nations Commission on International Trade Regulations and Law Arbitration

Rules administered by an arbitration agency, such as the International Centre for

Dispute Resolution, at a hearing to be held in New York, New York.  Id.

On September 3, 2009, SIBV filed a Demand for Arbitration with the International

Centre for Dispute Resolution, alleging that the defendants breached paragraphs 2 and

5.i of the Franchise Agreement by failing to pay royalty and advertising fees.  Pl.'s Appl.

to Confirm Arbitr. Award ¶ 9.  In response, the defendants filed defenses and

counterclaims with the International Centre for Dispute Resolution.  Id.  The arbitration

hearing was held from March 22 through 26, 2010.  Final Award of Arbitrator (Doc. No.

1-3) at 2.  Upon review of all claims and defenses raised by SIBV and the defendants,

Arbitrator Edna Sussman issued a twenty-four page final award dated August 2, 2010.

See id.  Pursuant to the arbitration award, the Franchise Agreement was terminated,

SIBV was awarded 13,868.90 Euros for outstanding royalty and advertising fees, and

the defendants were awarded 5,600.00 Euros for the cost of document production and

translation.  Id. at 23.  Arbitrator Sussman directed the defendants to pay SIBV the net

sum of 8,268.90 Euros within thirty days from the date of transmittal of the award.  Id.

In compliance with the award, SIBV received 8,268.90 Euros from the defendants on

September 20, 2010.  Pl.'s Appl. to Confirm Arbitr. Award ¶ 12.

On September 10, 2010, the defendants filed an action in New York state court

seeking to vacate the arbitration award at issue in this case.  Pl.'s Opp'n to Defs.' Mot.

to Dismiss (Doc. No. 84) at 3.  The action was dismissed on November 10, 2010, due to

improper service.  Id., Ex. A.  On September 10, 2010, the defendants also filed an

action in New York state court seeking to vacate a different arbitration award.  That

action was dismissed on December 9, 2010, due to improper service and "lack of merit."

Id., Ex. B.  On December 14, 2010, the defendants combined the two previously

dismissed actions and again filed them in New York state court as a single petition to

vacate the arbitration awards.  That petition was dismissed on August 29, 2011, due to

improper service.  Bletas, Panayota v. Subway International B.V., 116156/2010 (N.Y.

Sup. Ct. 8/29/2011.

On October 28, 2010, SIBV filed this action, which seeks to confirm the Final

Award of the Arbitrator.  Defendant John Bletas was dismissed from the action in a

Ruling entered yesterday.  See Ruling Re: Motion for Reconsideration (Doc. No. 105).

## II.    APPLICABLE LAW

In this case, subject-matter jurisdiction is conferred by 9 U.S.C. § 203, which

provides federal jurisdiction over actions to confirm or vacate an arbitration award

governed by the Convention on the Recognition and Enforcement of Foreign Arbitral

Awards (the "New York Convention").[1]  The New York Convention applies in this case

because SIBV is a foreign corporation, and Mr. and Ms. Bletas are foreign citizens.  See

9 U.S.C. § 202.

Because the Final Arbitration Award was entered in the United States, however,

---

[1] The FAA does not independently confer subject matter jurisdiction on the federal courts. See, e.g., Durant, Nichols, Houston, Hodgson & Cortese–Costa, P.C. v. Dupont, 565 F.3d 56, 63 (2d Cir. 2009); Perpetual Securities, Inc. v. Tang, 290 F.3d 132, 136 (2d Cir. 2002). "[T]here must be an independent basis of jurisdiction before a district court may entertain petitions" to confirm or vacate an award under the Act. Durant, 565 F.3d at 63 (internal quotation marks omitted).

"the domestic provisions of the FAA also apply, as is permitted by Articles V(1)(e) and V(2) of the New York Convention."  Scandinavian Reinsurance Co. Ltd. v. Saint Paul Fire and Marine Ins. Co., 2012 WL 335772, at *7 (2d Cir. February 3, 2012).  See also Zeiler v. Deitsch, 500 F.3d 157, 164 (2d Cir. 2007) (describing overlap of New York Convention and the FAA); Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc., 126 F.3d 15, 19–23 (2d Cir. 1997), cert. denied, 522 U.S. 1111 (1998).  "[T]he FAA and the New York Convention work in tandem, and they have overlapping coverage to the extent that they do not conflict." Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 n.1 (2d Cir. 2006) (internal quotation marks omitted).

## III.   STANDARD OF REVIEW

Confirmation of an arbitration award is generally "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court."  D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (quoting Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984)).  It is well settled that the court's function in confirming or vacating an Arbitrator's Award is "severely limited," Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir. 1997) (citations omitted) ("Willemijn"), and the district court "must grant" a petition to confirm the arbitration award "unless the award is vacated, modified, or corrected," 9 U.S.C. § 9.  The arbitrator need not explain his rationale for an award, and the district court will confirm the award "if a ground for the arbitrator's decision can be inferred from the facts of the case."  D.H. Blair, 462 F.3d at 110 (quoting Barbier v. Shearson Lehman Hutton, Inc., 948 F.2d 117, 121 (2d Cir. 1991)).  A district court may vacate an

4

arbitration award where an arbitrator acted in "manifest disregard of the law." Willemijn, 103 F.3d at 12 (citations omitted), but only "a barely colorable justification for the outcome reached" by the arbitrators is necessary to confirm the award. D.H. Blair, 462 F.3d at 110 (quoting Landy Michaels Realty Corp. v. Local 32B-32J, Service Employees Int'l Union, 954 F.2d 794, 797 (2d Cir. 1992)). A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high. Willemijn, 103 F.3d at 12.

## IV.    DISCUSSION

Ms. Bletas asserts three grounds for why the court should not confirm the arbitration award: (1) fraud and perjury; (2) that it violates public policy and the terms of the parties' agreement; and (3) that it was barred by the doctrine of res judicata. None has merit.

### A.    Fraud and Perjury

Ms. Bletas claims the arbitration award should not be confirmed because, during the arbitration hearing, an SIBV witness committed perjury. Ms. Bletas alleges SIBV Witness Gina Badalamenti committed perjury by incorrectly stating that Subway® franchisees in Greece paid 4.5 percent of gross sales in advertising fees instead of 3.5 percent. Def.'s Opp'n (Doc. No. 101) at 18.

To vacate an arbitration award on the basis of fraud, the challenging party must show that there was a fraud, that it could not have been discovered using due diligence during the arbitration proceedings, and that there was a material relation between the fraud and the award. A.G. Edwards & Sons, Inc. v. McCollough, 967 F.2d 1401, 1404

(9th Cir. 1992) (per curiam).  The veracity of Ms. Badalamenti's testimony is an issue

that should have been raised during the arbitration proceeding and may not serve as a

grounds to vacate the arbitration award.  Ms. Bletas does not show that the issue could

not have been raised then.  <u>Karppinen v. Karl Kiefer Machine Co.</u>, 187 F.2d 32, 35 (2d

Cir. 1951) (the party relying on an alleged perjurious statement to vacate an arbitration

award must show that it could not have discovered the perjury during the arbitration).

Moreover, it appears the arbitrator did address the parties' disagreement on what

percentage of gross sales should be used to calculate the advertising fees owed by the

Bletas as the Final Award of the Arbitrator calculated the advertising fees owed at 3.5

percent of the store's gross sales, the percentage the Bletas argued was correct at the

arbitration hearing.  Final Award of the Arbitrator at 11.

      Ms. Bletas further claims the arbitration award should not be confirmed because

SIBV Attorney Kristin Corcoran committed perjury and fraud upon the court by

improperly serving SIBV's Application to Confirm Arbitration Award upon the Bletas.

This claim is a mere reiteration of the personal jurisdiction defense Ms. Bletas raised in

her Motion to Dismiss.  <u>See</u> Doc. No. 66 at 4-5.  The court (Dorsey, J.) has already

ruled that Ms. Bletas forfeited her personal jurisdiction defense arising from improper

service of process by participating in a settlement conference.  <u>See</u> Ruling on Motions

to Transfer and Dismiss (Doc. No. 100).  She may not now repackage that defense as a

claim of fraud.

      B.    <u>Violation of Public Policy and the Terms of the Parties' Agreement</u>

      Ms. Bletas claims that upholding the arbitration award would violate public policy

because it would require Ms. Bletas to pay the award to SIBV without withholding the appropriate tax payments.  Def.'s Opp'n at 14-16.  SIBV concedes that this court has the power to set aside an arbitration award that violates public policy, but it contends that there was no such violation here because the award is merely silent as to the issue of taxes and does not require the non-payment of taxes on the award.  Pl.'s Reply (Doc. No. 102) at 6-7.

There seems to be no disagreement between the parties that public policy dictates that all applicable tax payments on the award should be made to the appropriate authorities.  The disagreement between the parties arises from whether Arbitrator Sussman's failure to specifically order the payment of taxes on the award constitutes a violation of public policy sufficient to clear the high threshold necessary to set aside an arbitral award.  This court concludes that it is not.

The New York Convention empowers a court to deny "[t]he recognition or enforcement of the award [when it] would be contrary to the public policy of that country."  New York Convention, Art. V(2)(b).  To set aside an arbitration award, a court must conclude that the award "would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 43 (1987). (internal quotation marks omitted).  "[A] court's task in reviewing an arbitral award for possible violations of public policy is limited to determining whether the award itself, as contrasted with the reasoning that underlies the award, 'create[s] [an] explicit conflict with other laws and

legal precedents' and thus clearly violates an identifiable public policy." <u>IBEW, Local 97</u> <u>v. Niagara Mohawk Power Corp.</u>, 143 F.3d 704, 716 (2d Cir. 1998) (quoting <u>Misco</u>, 484 U.S. at 43); <u>see also</u> <u>Banco de Seguros del Estado v. Mutual Marine Office, Inc.</u>, 344 F.3d 255, 264 (2d Cir. 2003).

The Final Award of the Arbitrator's silence as to the withholding of tax payments does not create an "explicit conflict with other laws and legal precedents."  Nothing in the award forbids the parties from withholding amounts pursuant to the tax laws of any jurisdiction or otherwise directs the parties to fail to pay any taxes due.  The court agrees with SIBV that the award permits the parties to fully comply with any and all applicable tax laws and thus does not violate public policy.

Ms. Bletas further argues that the award should not be confirmed because it violates the terms of the parties' agreement.  Def.'s Opp'n at 16.  The Franchise Agreement contains a provision that reads in relevant part:

> You may be required by law to withhold taxes on all payments to us.  If you are required to withhold such taxes, you will provide us documentation containing the tax rates.  We and you will cooperate to furnish documents the taxing authorities require to establish the applicable withholding tax rate.  You will pay all taxes you withhold to the appropriate authorities and send us a tax certificate or other evidence confirming payment.

Franchise Agr. (Doc. Nos. 1-1 & 1-2) ¶ 11(k).  Ms. Bletas claims this provision of the Franchise Agreement obligates the arbitrator to make the withholding of taxes and the filing of a new tax form by SIBV a condition of the arbitration award and that Arbitrator Sussman's failure to include such a condition in the Final Award of the Arbitrator violates the terms of the Franchise Agreement.  Def.'s Opp'n at 15-16.  This court disagrees.  As discussed above, the Final Award of the Arbitrator does not prevent the

8

withholding of tax payments, it is merely silent as to the issue.  The award, therefore, does not conflict with the terms of the Franchise Agreement.

      C.    <u>Res Judicata</u>

      Ms. Bletas claims that the Final Award of the Arbitrator must be vacated or modified because it was barred by the doctrine of res judicata of an earlier arbitration award.  Def.'s Opp'n at 17-18.  Two months before Arbitrator Sussman entered the instant arbitration award, Arbitrator John Holsinger entered a Partial Final Arbitration Award ("Holsinger Award") in an arbitration proceeding between SIBV and Ms. Bletas.  <u>Subway International B.V. v. Bletas</u>, Case No. 3:10-cv-1715 (JCH), Doc. No. 1-3, Final Partial Arbitration Award at 1.  The Holsinger Award involved a different restaurant than the restaurant at issue in this case.  Arbitrator Holsinger's award dealt with Subway Restaurant #36829, which was franchised exclusively by Ms. Bletas, while the restaurant at issue in Arbitrator Sussman's Final Award of the Arbitrator was Subway Restaurant #33926, which was franchised by both Mr. and Ms. Bletas. Although the two arbitration proceedings dealt with different restaurants and franchise agreements, the issues presented in the proceedings were similar.  Ms. Bletas argues that the Holsinger Award had preclusive effect over the Sussman arbitration proceeding and that, therefore, the Final Award of the Arbitrator must not be confirmed as it was inconsistent with the Holsinger Award.

      The doctrine of res judicata, or claim preclusion, holds that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." <u>Allen v. McCurry</u>, 449 U.S. 90, 94

(1980); Burgos v. Hopkins, 14 F.3d 787, 789 (2d Cir. 1994).  To prove that a claim is precluded, a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.  Allen, 449 U.S. at 94; Burgos, 14 F.3d at 789; Chase Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d 343, 345-46 (2d Cir. 1995).  The Holsinger Award could not have preclusive effect on the arbitration before Arbitrator Sussman because the claims asserted in the Sussman arbitration proceeding were not, and could not have been, raised in the Holsinger arbitration proceeding.  The Franchise Agreement forbids franchisees from consolidating a dispute in any arbitration action with a claim by any other franchisee, individual or entity.[2]  As the Sussman arbitration proceeding involved a different franchise and a different set of franchisees than the Holsinger proceeding, the Franchise Agreement prevented the claims arising from the different franchises from being decided in the same action.  Therefore, the doctrine of res judicata does not apply.

Moreover, the parties contractually agreed that any arbitration awards between the parties would have no preclusive effect on later arbitration proceedings.  The Franchise Agreement provides that any "arbitration award will have a binding effect only on the actual Dispute arbitrated, and will not have any collateral effect on any other dispute whatsoever, whether in litigation, arbitration, or other dispute resolution

---

[2] Subparagraph 10(I) of the Franchise Agreement reads, in relevant part: "You will arbitrate or litigate each Dispute with us on an individual basis.  You will not consolidate your Dispute in any arbitration or litigation action, with a claim by any other franchisee, individual, or entity."

proceeding." Franchise Agr. ¶ 10(I).

## V.    CONCLUSION

For the reasons herein, the Application to Confirm Arbitration Award (Doc. No. 1) is granted.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 13th day of March, 2012.

 /s/ Janet C. Hall
Janet C. Hall
United States District Judge